# IN THE COURT OF APPEALS OF IOWA

No. 16-0164
Filed May 17, 2017

**SALI DAUD FARAH,**
     Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
     Respondent-Appellee.

_____

Appeal from the Iowa District Court for Polk County, Robert B. Hanson, Judge.

Sali Daud Farah appeals from the denial of his request for postconviction relief. **AFFIRMED.**

Scott D. Fisher of Fisher Law Firm P.L.C., West Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee State.

Considered by Vogel, P.J., McDonald, J., and Goodhue, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**GOODHUE, Senior Judge.**

Sali Daud Farah appeals from the denial of his request for postconviction relief.

## I. Background Facts and Proceedings

On February 8, 2013, Farah entered a convenience store and began shouting and cursing at the manager. Farah had blood-shot eyes, smelled of the odor of an alcoholic beverage, and was clearly intoxicated. An off-duty police officer advised Farah his actions could not be tolerated. Farah began to exit the store but did an about face and began yelling at the officer. The officer proceeded to arrest Farah, but Farah resisted, and the ensuing struggle resulted in the officer suffering an injury that required stitches. Farah was charged with interference with official acts causing injury and with assault on a peace officer. He pled guilty to both charges.

Farah is not a citizen of the United States. After the pleas were entered, the United States government attempted to deport him. Farah filed an application for postconviction relief, stating his counsel was ineffective for failing to advise him that the convictions arising from the guilty pleas could result in his deportation.

## II. Issue Preservation

For an issue to be preserved it must be both raised before and ruled on by the trial court. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Farah raised the issue of ineffective assistance of counsel in his application before the trial court, and it was ruled on. Error has been preserved.

### III. Standard of Review

Generally an application for postconviction relief is reviewed for corrections of errors at law. *LaMasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012). But when the applicant claims ineffective assistance of counsel, a constitutional issue has been raised and the review is de novo. *Id.*

### IV. Discussion

To prevail on a claim of ineffective assistance of counsel, the claimant must prove by a preponderance of the evidence that (1) counsel failed to perform an essential duty and (2) prejudice resulted. *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). Both of the elements must be proven, and if there is a failure to prove either, the other element need not be considered. *Id.* Farah did not prove counsel failed to perform an essential duty.

Counsel has an obligation and a duty to advise a non-citizen client that on conviction he or she may be deported. *Padilla v. Kentucky*, 559 U.S. 356, 369 (2010). When the likelihood of deportation is clear, counsel's obligation is to advise the client the deportation is a likely consequence of the conviction. *Id.* Whether counsel has an obligation to advise his client of the possibility or probability of deportation is dependent upon the clarity of the deporting statute that is applicable given the particular factual situation. *See id.*

Written pleas were entered, Farah signed both of them, and both contained warning statements that a conviction "may . . . result in a deportation." Farah testified he did not read the document but signed it anyway. Farah contends that this a case where counsel should have recognized deportation was a clear result of the convictions and he should have been so advised.

Whether Farah's convictions would clearly result in an automatic deportation is problematic. "[N]othing is ever simple with immigration laws." *Id.* at 381-82 (Alito, J., concurring) (quoting R. McWhirter, ABA, The Criminal Lawyer's Guide to Immigration Law: Questions and Answers § 4.65, at 130 (2d ed. 2006)). However, we do not need to consider whether deportation was a probable consequence or a possible consequence of the convictions.

Farah's counsel testified that when her investigator first interviewed Farah, Farah stated that he was a citizen. Farah's counsel further testified that Farah confirmed his citizenship on more than one occasion when meeting with her. Counsel's notes confirm her testimony. In contrast, Farah testified that he never told anyone that he was a United States citizen but instead indicated that he was a permanent resident.

Farah's counsel had received significant training as to her obligation to a non-citizen as provided by *Padilla*. She also had a comprehensive system of recording her contacts with clients and what happened during each contact. Counsel clearly understood the importance of citizenship, as evidenced by the notations regarding Farah's claim of citizenship in her records.

Furthermore, regardless of whether the plea agreements correctly asserted the possibility or probability of deportation, both contained a handwritten statement "Δ is a citizen he advises." Again, Farah signed both documents.

Perhaps the most telling testimony concerns Farah's counsel's explanation of Farah's right to call the consulate of his country of citizenship or consult an immigration attorney. Counsel had a document that she signed and presented to Farah to sign that set out the rights of a non-citizen, but Farah

refused to sign or consider it, instead confirming his earlier representations that he was a United States citizen.

Farah made much of Iowa Department of Transportation and Department of Corrections records that classified Farah as a United State citizen. Farah suggested counsel probably obtained the information that he was a citizen from those documents rather than from his statements. However, counsel testified that she would not have seen those records until after Farah entered the pleas, and the documents most likely were prepared after the pleas were entered and were based again on Farah's representations. We are uncertain of the motivation for Farah's ongoing claim that he was a citizen of the United States, but we are inclined to assume Farah had previously made the decision that it was to his advantage to claim he was a United States citizen, and he continued to insist that he was.

Farah indicates that counsel should not have accepted his consistent representations that he was citizen and should have investigated further. In spite of the fact he might have insisted that he was a United States citizen, Farah points to various factors that represent red flags that he alleges should have triggered further investigation. There was evidence he was born in Africa, and he had an accent.

Counsel is required to make a reasonable investigation or make reasonable decisions that make a particular investigation unnecessary. *Ledezma*, 626 N.W.2d at 145. If a defendant has given counsel information that an investigation would be frivolous or unwarranted, there is no duty to investigate. *Id.* Or, put another way, "[t]he reasonableness of counsel's actions

may be determined or substantially influenced by a defendant's own statements or actions." *Strickland v. Washington,* 466 U.S. 668, 691 (1984).

Farah made it clear that an investigation of his citizenship would be fruitless or unwarranted. Counsel had no duty to investigate Farah's citizenship and, therefore, no duty to inform him of the possibility or probability of his deportation. Under the facts of the case, Farah's claim of ineffective assistance of counsel is of no merit because he has not proved that counsel failed to perform an essential duty.

**AFFIRMED.**